# 14-3035-cv

## United States Court of Appeals
### *for the*
## Second Circuit

LG ELECTRONICS, INC.; LG ELECTRONICS U.S.A., INC.,

*Plaintiffs-Appellants,*

v.

Wi-LAN USA, INC. and Wi-LAN, INC.,

*Defendants-Appellees.*

———————————————

On Appeal from the United States District Court
for the Southern District of New York, No. 13-cv-2237-RA.
The Honorable Ronnie Abrams, Judge Presiding

## BRIEF AND SPECIAL APPENDIX OF PLAINTIFFS-APPELLANTS LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC.

RICHARD D. HARRIS
JAMES J. LUKAS, JR.
MATTHEW J. LEVINSTEIN
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 465-8400
Facsimile: (312) 456-8435

*Attorneys for Plaintiffs-Appellants*


COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER


## <u>CORPORATE DISCLOSURE STATEMENT</u>

Counsel for Plaintiffs-Appellants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "LG") certifies the following:

LG Electronics U.S.A., Inc. is a wholly owned subsidiary of LG Electronics, Inc., a publicly held company in the Republic of Korea. LG Corporation, a publicly held company in the Republic of Korea, owns more than 10% of LG Electronics, Inc.


DATED: November 14, 2014          /s/ James J. Lukas, Jr.
                                  James J. Lukas, Jr.

# TABLE OF CONTENTS

I.     STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ...........................................................................1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................2

III.   STATEMENT OF THE CASE ..................................................................3

     A.      Wi-LAN Had Actual Knowledge Of The Arbitration Provision Contained In The Prior Patent License Agreement Between Wi-LAN And LG Long Before It Initiated The Judicial Process ..............5

     B.      Wi-LAN Voluntarily Elected To File Its Underlying Patent Infringement Action And LG Responded By Filing Its Case-Dispositive Motion For Summary Judgment Of Non-Infringement Based On License ...........................................................6

     C.      Wi-LAN Subsequently Demanded Arbitration In New York And Moved To Compel Arbitration In The Florida Court ..................8

     D.      Wi-LAN Continued To Aggressively Litigate The Florida Case *After* LG Filed Its Summary Judgment Motion Based On License And *After* Wi-LAN Commenced Arbitration And Moved To Compel Arbitration ...........................................................10

     E.      LG Filed Its Action In The District Court To Enjoin Wi-LAN From Proceeding With The New York Arbitration ............................14

     F.      Wi-LAN Subsequently Reversed Its Position On LG's Motion To Transfer Venue, LG's Motion To Stay Discovery, And Whether The District Court Had Exclusive Jurisdiction To Enjoin Or Compel The New York Arbitration ...................................15

     G.      The District Court Granted Wi-LAN's Motion To Compel Arbitration And Denied LG's Motion To Enjoin Arbitration ............16

IV.   STANDARDS OF REVIEW........................................................................18

V.    SUMMARY OF THE ARGUMENT ..........................................................19

VI.    ARGUMENT ...................................................................................20

    A.    Wi-LAN Waived Its Right To Arbitrate. ...........................................20

        1.    This Court's Precedent And Public Policy Compel A Finding Of Waiver Here Because Wi-LAN Demonstrated An Explicit And Unambiguous Intent To Litigate Rather Than Arbitrate ........................................................................20

        2.    This Court's Precedent Demonstrates That Wi-LAN's Status As The Party Who First Chose To Litigate And Later Chose To Arbitrate Is Highly Suggestive Of A Finding Of Waiver .................................................................25

        3.    The District Court Clearly Erred In Finding That LG Has Not Been Prejudiced ...............................................28

    B.    The Claim Splitting Doctrine Prevents Wi-LAN From Litigating And Arbitrating The Same Patent Infringement Claims Thereby Requiring That Wi-LAN's Motion To Compel Arbitration Be Denied As A Matter Of Law........................................37

VII.    CONCLUSION ................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
 326 F.3d 63 (2d Cir. 2003) ................................................................37

*Baker & Taylor, Inc. v. AlphaCraze.com Corp.*,
 602 F.3d 486 (2d Cir. 2010) ..............................................................23

*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*,
 50 F.3d 388 (7th Cir. 1995) ...............................................................21

*Cotton v. Slone*,
 4 F.3d 176 (2d Cir. 1993) ...................................................................33

*Doctor's Assocs., Inc. v. Distajo*,
 66 F.3d 438 (2d Cir. 1995) .................................................................23

*Foster v. Hallco Mfg. Co., Inc.*,
 947 F.2d 469 (Fed. Cir. 1991) ............................................................39

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
 Case No. 12C3229, 2013 U.S. Dist. LEXIS 12142 (N.D. Ill. Jan.
 30, 2013) .............................................................................................38

*Gilmore v. Shearson/American Express, Inc.*,
 811 F.2d 108 (2d Cir. 1987) ..............................................................22

*Intel Corp. v. Negotiated Data Solutions, Inc.*,
 703 F.3d 1360 (Fed. Cir. 2012) .........................................................30

*Kanciper v. Suffolk County Soc. for the Prevention of Cruelty to
 Animals, Inc.*,
 722 F.3d 88 (2d Cir. 2013) .................................................................18

*Kanciper v. Suffolk County Soc. for the Prevention of Cruelty to
 Animals, Inc.*,
 Case No. 12-CV-2104(ADS)(ARL), 2013 WL 673740 (E.D.N.Y.
 Feb. 23, 2013) ....................................................................................38

*Katz v. Gerardi*,
   655 F.3d 1212 (10th Cir. 2011) ..........................................................38

*Khan v. Parsons Global Servs., Ltd.*,
   521 F.3d 421 (D.C. Cir. 2008)............................................................22

*Kim v. Sara Lee Bakery Group, Inc.*,
   412 F. Supp. 2d 929 (N.D. Ill. 2006)..................................................38

*Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc.*,
   62 F.2d 1004 (2d Cir. 1933) ...............................................................22

*Kulukundis Shipping Co., S/A, v. Amtorg Trading Corp.*,
   126 F.2d 978 (2d Cir. 1942) ...............................................................22

*La. Stadium & Exposition v. Merril Lynch & Co.*,
   626 F.3d 156 (2d Cir. 2010) ........................................................*passim*

*LG Electronics, Inc. v. Wi-LAN USA, Inc.*,
   Case No. 13-cv-2237-RA, 2014 U.S. Dist. Lexis 99827 (S.D.N.Y.
   July 21, 2014).........................................................................5, 16, 17

*Liberian Vertex Transports v. Assoc. Bulk Carriers*,
   738 F.2d 85 (2d Cir. 1984) ............................................................20, 23

*Louis Drefus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
   252 F.3d 218 (2d Cir. 2001) ...............................................................26

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*,
   58 F.3d 616 (Fed. Cir. 1995) ..............................................................40

*Nicholas v. KBR Inc.*,
   565 F.3d 904 (5th Cir. 2009) ..............................................................21

*Nortuna Shipping Co. v. Isbrandtsen Co.*,
   231 F.2d 528 (2d Cir. 1956) ...............................................................22

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*,
   128 F.3d 103 (2d Cir. 1997) .........................................................18, 28

*Reid Burton Constr., Inc. v. Carpenters District Council of So. Colo.*,
   614 F.3d 698 (10th Cir. 1980) ............................................................22

iv

*In re S&R Co. of Kingston*,
    159 F.3d 80 (2d Cir. 1998) ...............................................................33

*Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*,
    49 F.Supp.2d 331 (S.D.N.Y. 1999) *aff'd*, Case No. 99-7638, 1999
    U.S. App. Lexis 32546 (2d Cir. Dec. 15, 1999) ...........................*passim*

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
    495 F. Supp. 2d 1052 (S.D. Cal. 2007)..............................................38

*Steaher v. The Hartford Fin. Servs. Group, Inc.*,
    547 F.3d 406 (2d Cir. 2008) ...............................................................3

*Stok & Assocs., P.A. v. Citibank, N.A.*,
    131 S.Ct. 1556 (2011)........................................................................25

*In re Suprema Specialties, Inc.*,
    Case No. 07-4100-bk, 2008 WL 2629476 (2d Cir. July 1, 2008) .....................21

*Thomas James Assocs., Inc. v. Jameson*,
    102 F.3d 60 (2d Cir. 1996) ..........................................................20, 21

*Zervos v. Verizon New York, Inc.*,
    252 F.3d 163 (2d Cir. 2001) ..............................................................18

## Federal Statutes

28 U.S.C. § 1331 ................................................................................1

28 U.S.C. § 1332 ................................................................................1

35 U.S.C. § 271 ................................................................................41

Declaratory Judgment Act, 28 U.S.C. § 2201 .........................................1

Federal Arbitration Act, 9 U.S.C. § 1 *et seq*....................................*passim*

Federal Arbitration Act § 21.3.3 (1994) ................................................24

# I. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The United States District Court for the Southern District of New York ("District Court") had subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1331 because LG's claims arise under federal law, namely, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The District Court also had subject matter jurisdiction under 28 U.S.C. § 1332, because there was complete diversity and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. Further, the District Court had subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual controversy existed within the District Court's jurisdiction such that the District Court could declare the rights and other legal relations between LG and Wi-LAN USA, Inc. and Wi-LAN Inc. (collectively "Wi-LAN") as interested parties to the District Court action. This Court has appellate jurisdiction over this appeal.

LG appeals the denial of its motion to enjoin arbitration and the grant of Wi-LAN's cross-motion to compel arbitration in the District Court, which is a final decision with respect to arbitration under the Federal Arbitration Act, 9 U.S.C. § 16(a)(3). LG's appeal is timely because the District Court entered its opinion and order denying LG's motion to enjoin arbitration and granting Wi-LAN's cross-motion to compel arbitration on July 21, 2014, and entered a final judgment that same day. LG filed its notice of appeal in the District Court on August 20, 2014.

## II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

**1.**   Whether Wi-LAN waived its right to arbitrate.  More specifically, whether Wi-LAN waived its right to arbitrate where Wi-LAN (a) voluntarily and expressly filed a patent infringement lawsuit against LG in the United States District Court for the Southern District of Florida ("Florida Court") asserting infringement of licensed patents and products; (b) unambiguously demonstrated an intent to litigate rather than arbitrate; (c) actively litigated its action in the Florida Court, including serving substantive written discovery and opposing LG's multiple attempts to stay discovery and for a protective order pending the Florida Court's decision on LG's dispositive motions, LG's motion to transfer venue, and Wi-LAN's motion to compel arbitration; (d) twice opposed LG's dispositive motions and motion to transfer venue; (e) twice amended its complaint in response to LG's dispositive motions; (f) filed motions to compel arbitration and to enjoin the District Court action; and (g) waited four months after the filing of its complaint in the Florida Court, and two years after entering into the parties' prior patent license agreement ("PLA") to request arbitration.

**2.**   Whether Wi-LAN's voluntary and express initiation of its patent infringement action in the Florida Court and its active litigation of the underlying patent infringement claim, even after Wi-LAN filed its motion to compel arbitration, prevent Wi-LAN from arbitrating the same claim under the claim-

splitting doctrine.

## III.    STATEMENT OF THE CASE

Wi-LAN initially filed a patent infringement lawsuit against LG in the Florida Court.  *See Wi-LAN, Inc. v. LG Electronics, Inc.*, Case No. 1:12-cv-23611-DMM (S.D.Fla.) ("Florida Case"), Dkt. No. 1.[1]  In response, LG filed a motion for summary judgment of non-infringement based on the prior Patent License Agreement ("PLA") between the parties.  (Florida Case, Dkt. No. 22.)    LG also filed another dispositive motion and a motion to transfer venue.  (Florida Case, Dkt. Nos. 25, 30.)[2]  Subsequently, Wi-LAN initiated an arbitration in New York (A96-100), moved to compel arbitration in the Florida Court (Florida Case, Dkt. No. 37), twice opposed LG's pending motions in the Florida Case (Florida Case, Dkt. Nos. 38, 40, 41, 65, 66, 70), twice amended its Florida Case complaint (Florida Case, Dkt Nos. 35, 36), propounded written discovery on LG in the Florida Case (A67-94), and twice opposed LG's motions to stay the case and for a protective order pending the Florida Court's decision on LG's pending motions and Wi-LAN's motion to compel arbitration (Florida Case, Dkt. Nos. 68, 78).

---

[1] This Court can take judicial notice of the parties' filings in the Florida Case.  *See Steaher v. The Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

[2] After Wi-LAN amended its Complaint, the Florida Court denied all of LG's pending motions as moot (*see* Florida Case, Dkt. No. 43) and LG was required to refile them (*see* Florida Case, Dkt. Nos. 49, 51, 52, 53).

Because the PLA included a New York forum clause in its arbitration provision (CA30-31), LG sued Wi-LAN in the District Court on April 4, 2013, requesting that the District Court enjoin Wi-LAN from proceeding with its New York arbitration. CA1-20. In support of LG's request for injunctive relief, LG presented four main arguments. LG argued that (1) Wi-LAN waived its right to arbitrate by voluntarily and aggressively pursuing litigation in the Florida Court; (2) Wi-LAN's arbitration demand was beyond the scope of the arbitration provision of the PLA because Wi-LAN invoked the equitable relief clause of the arbitration provision by filing its action in the Florida Court; (3) Wi-LAN's simultaneous pursuit of the same patent infringement claims in both the Florida Court and the New York arbitration violated the claim-splitting doctrine; and (4) Wi-LAN was attempting to arbitrate non-arbitrable issues. CA38-77. LG also explained that it had been, and would continue to be, irreparably harmed absent immediate injunctive relief because being forced to expend resources arbitrating non-arbitrable issues constitutes irreparable harm as a matter of law. *Id.*

After seeking to have the Florida Court enjoin LG's action before the District Court (Florida Case, Dkt. No. 82; A267-83), and after twice opposing LG's transfer motion (Florida Case, Dkt. Nos. 40, 66), Wi-LAN agreed to transfer Wi-LAN's Florida Court action to the District of New Jersey ("New Jersey Court") (*see* Florida Case, Dkt. No. 107), and also later agreed that the District Court—not

4

the Florida Court or the New Jersey Court—must decide whether the New York arbitration should proceed.  A469-93.  Wi-LAN then filed its own cross-motion to compel arbitration in the District Court on November 22, 2013.  *Id.*

The Honorable Judge Ronnie Abrams granted Wi-LAN's motion to compel arbitration and denied LG's motion to enjoin Wi-LAN from participating in the New York arbitration on July 21, 2014.  The Clerk entered a final judgment that same day.  *LG Electronics, Inc. v. Wi-LAN USA, Inc*., Case No. 13-cv-2237-RA, 2014 U.S. Dist. Lexis 99827 (S.D.N.Y. July 21, 2014); A791-806.  The District Court held that Wi-LAN had not waived its right to arbitration and that Wi-LAN did not violate the claim splitting doctrine.  *Id.*  LG timely appealed the district court's Judgment and moved to stay execution of the judgment pending appeal. A818-35. The District Court has not ruled on LG's motion to stay.

## A. Wi-LAN Had Actual Knowledge Of The Arbitration Provision Contained In The Prior Patent License Agreement Between Wi-LAN And LG Long Before It Initiated The Judicial Process

In a prior case between Wi-LAN and LG that they litigated from 2008 to 2010 (the "Prior Litigation"), Wi-LAN asserted that LG's products compliant with the 802.11 Wi-Fi standard infringed its patents.  A772-73; *see also* Florida Case, Dkt. No. 51.  Wi-LAN and LG ultimately settled the Prior Litigation in December 2010, and LG took a license pursuant to the PLA whereby all of LG's wireless products were licensed to virtually all of Wi-LAN's then-owned and future-

5

acquired patents. CA22-35. Andrew Parolin, the only employee that Wi-LAN identified in its Rule 26(a) Disclosures in the Florida Case, negotiated the Agreement on behalf of Wi-LAN. A103 (representing that Mr. Parolin is the only Wi-LAN employee with discoverable information regarding the topics of "Wi-LAN background, ownership, licensing, and value of the patents-in-suit"); *see also* A162 ("I, along with a colleague, negotiated WiLAN's existing wireless licensing agreement with LG.").

Then, after Wi-LAN initiated the Florida Case in October 2012, the very same Mr. Parolin forwarded Wi-LAN's original complaint to LG. A165. Accordingly, Mr. Parolin and Wi-LAN had actual knowledge and full awareness of the Agreement and its provisions, including the arbitration provision, when Wi-LAN voluntarily filed the Florida Case against LG. In addition to the arbitration provision (*see* CA30-31), the definition of "Licensed Patents" (which includes the patents at issue in the underlying case) and "Subject Products" (which includes all LG "wireless products") largely define the relevant portions of the Agreement. CA22-23.

### B. Wi-LAN Voluntarily Elected To File Its Underlying Patent Infringement Action And LG Responded By Filing Its Case-Dispositive Motion For Summary Judgment Of Non-Infringement Based On License

Wi-LAN filed its original complaint at issue against LG in the Florida Court alleging infringement of U.S. Patent Nos. 6,359,654 and 7,034,889 on October 3,

2012 ("Asserted Patents"). (*See* Florida Case, Dkt. No. 1.) Wi-LAN's complaint requested a jury trial, an award of damages, and both preliminary and permanent injunctive relief. (*Id.*) LG responded to Wi-LAN's original complaint on January 25, 2013 by moving for summary judgment of noninfringement based on license, for dismissal of Wi-LAN's inducement of infringement claims, and for a transfer of venue to the District of New Jersey. (*See* Florida Case, Dkt. Nos. 22, 25, 30.)

In Wi-LAN's complaint, Wi-LAN alleged only a single product line that infringed the Asserted Patents. That lone accused product line is "the 6200 series of flat panel televisions depicted in the attached Exhibit C." (*See* Florida Case, Dkt. No. 1 ¶¶ 10, 15.)[3] Exhibit C to Wi-LAN's complaint is a publicly available website printout that further identifies the model numbers of the accused LG 6200 series of flat panel televisions ("Accused Products"). (*See* Florida Case, Dkt. Nos. 1-6; 35-3.) Wi-LAN did not identify any other specific models, model series, product lines, or product categories as allegedly infringing products.

The only Accused Products identified in all of Wi-LAN's complaints are compliant with one or more of the 802.11 Wi-Fi standards, the standards at issue in the Prior Litigation. The Prior Litigation resulted in the 2010 PLA, in which Wi-LAN granted LG a license to virtually all of Wi-LAN's then-owned and future-

---

[3] *See also* Florida Case, Dkt. 35 ¶¶ 10, 18; Dkt. 36-1 ¶¶ 10, 21 (Wi-LAN's First Amended Complaint and Proposed Second Amended Complaint).

acquired patents (including the Asserted Patents) covering LG's wireless (Wi-Fi-compliant) products. The Accused Products are, therefore, wireless products under the PLA. Deliberately ignoring the PLA, Wi-LAN sued LG, asserting infringement of licensed patents based on LG's manufacture, use, sale and/or importation of licensed products. A792. Accordingly, LG moved for summary judgment of non-infringement based on license. (*See* Florida Case, Dkt. Nos. 22, 51.)

### C. Wi-LAN Subsequently Demanded Arbitration In New York And Moved To Compel Arbitration In The Florida Court

Wi-LAN filed a demand for arbitration before JAMS in New York City on February 8, 2013, four months after filing its original complaint and two weeks after LG filed its summary judgment motion. A96-100. Wi-LAN's arbitration demand stated that the dispute "arises out of the interpretation of the Patent License Agreement entered into between Wi-LAN International Inc., Wi-LAN Inc., and LG Electronics Inc. and its Subsidiaries on December 21, 2010 (the 'PLA')." A99. Wi-LAN requested the following relief in its demand: "that the arbitrator determine the proper interpretation of the PLA." *Id.*; *see also* Florida Case, Dkt. No. 38, Wi-LAN's Opp. to Defs.' Mot. for Summ. J. of Non-Infringement Based on License, at 2 ("the scope of coverage of a license in relation to the claims of infringement in [] this case").

Wi-LAN filed its motion to compel arbitration in the Florida Court on

February 11, 2013, arguing that the following provision of the Agreement requires arbitration:

> Arbitration:  Any dispute, controversy, or difference which may arise between any Parties out of or in relation to or in connection with the interpretation of this Agreement or any breach of this Agreement shall be settled amicably between the Parties, but in the event no amicable settlement can be reached, shall be finally settled by arbitration in the City of New York, U.S.A. which arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. . . .  Notwithstanding anything contained in this Agreement to the contrary, any Party may seek injunctive or other equitable relief whenever the facts or circumstances would permit such Party to seek such equitable relief in a court of competent jurisdiction whether in lieu of, in addition to, or prior to initiation of any arbitration as set forth above.

(CA29-30.)

Thus, Wi-LAN asked the Florida Court to compel arbitration in New York.

JAMS commenced the arbitration filed by Wi-LAN on March 4, 2013. A129-43.  LG objected to the arbitration and requested that JAMS suspend or stay the arbitration pending a court decision on (i) whether Wi-LAN waived its right to arbitrate, (ii) whether LG had a contractual right to move for summary judgment in the Florida Case, and (iii) arbitrability, that is, which issues, if any, require arbitration.  A149-51.  Wi-LAN responded that the arbitration should proceed before JAMS.  A153-56.  JAMS denied LG's request for a stay of the arbitration on March 25, 2013, and gave the parties until April 4, 2013, to return their respective arbitrator strike list.  A158-60.

9

### D. Wi-LAN Continued To Aggressively Litigate The Florida Case *After* LG Filed Its Summary Judgment Motion Based On License And *After* Wi-LAN Commenced Arbitration And Moved To Compel Arbitration

Almost two weeks after LG filed its motion for summary judgment based on license, and immediately after the parties held a Rule 26 conference, Wi-LAN served its first set of District Court interrogatories and its requests for the production of documents and things ("Written Discovery") on February 5, 2013. A68-94. On February 8, 2013, the same day Wi-LAN filed its arbitration demand (A100), LG filed its first motion to stay discovery and to defer (1) filing a Joint Rule 26 Conference Report and Proposed Scheduling Order and (2) a Rule 16 Conference pending the Florida Court's decisions on LG's motions. (*See* Florida Case, Dkt. No. 34; *see also* A793.)

After filing its arbitration demand (A100), Wi-LAN filed a first amended complaint on February 11, 2013. (*See* Florida Case, Dkt. No. 35.) Wi-LAN also moved for leave to file a supplemental second amended complaint to add a willful infringement claim and additional facts. (*See* Florida Case, Dkt. No. 36; *see also* A793.) Wi-LAN moved the Florida Court to compel arbitration in New York (*see* Florida Case, Dkt. No. 37), and filed its responses to LG's motions the same day. (*See* Florida Case, Dkt. Nos. 38, 40, 41; *see also* A793.) The Florida Court denied all of LG's motions as moot in view of Wi-LAN's first amended complaint. (*See* Florida Case, Dkt. Nos. 43-44; *see also* A793.) On February 19, 2013, Wi-LAN

served on LG its Rule 26 Disclosures.  A102-07.

LG filed renewed motions for summary judgment of noninfringement based on license, to dismiss Wi-LAN's inducement of infringement claims, and to transfer venue to the District of New Jersey on February 22, 2013.  (*See* Florida Case, Dkt. Nos. 49, 51, 53.)  Wi-LAN again opposed LG's renewed motions.  (*See* Florida Case, Dkt. Nos. 65, 66, 70.)  In response to Wi-LAN's motion to compel arbitration, LG requested that if either the New York Arbitration commenced or the Florida Court ordered arbitration, that the Florida Court dismiss or stay the Florida Case. (Florida Case, Dkt. No. 56 at 13-15.)

Notwithstanding that the only Accused Products identified in Wi-LAN's complaints are wireless products, and, therefore, are covered by the PLA, Wi-LAN contended that the Florida Court should deny LG's motion for summary judgment of non-infringement based on license—and neither dismiss nor stay the action, should the Florida Court agree to compel arbitration.  Thus, Wi-LAN requested that the Florida Court permit the "dual-tracking" of Wi-LAN's infringement claim. More specifically, Wi-LAN argued that the Florida Court should compel arbitration of infringement issues relating to the only Accused Products identified in Wi-LAN's first amended complaint (which are wireless) and allow the Florida Case to continue with respect to certain unknown (unasserted) products that Wi-LAN had never identified in any one of its three complaints, that may not be

covered by the Agreement. (*See* Florida Case, Dkt. No. 38, Wi-LAN's Opp. to Defs.' Mot. for Summ. J. of Non-Infringement Based on License, at 7; *see also* Florida Case, Dkt. No. 54, Wi-LAN's Scheduling and Discovery Report and [Proposed] Scheduling Order, at 4 ("Wi-LAN does not believe arbitration will require a stay of these proceedings. The arbitration relates only to LG's license defense with regard to televisions having WiFi. It does not restrict the court from moving forward on the non-Wi-Fi televisions. . . . Moreover, the Patent License Agreement upon which LG relies indicates that Wi-LAN may seek judicial relief in some instances even if it is in addition to an arbitration.").)

LG also moved the court, for a second time, to defer filing a Joint Rule 26 Conference Report and Proposed Scheduling Order, to defer setting a Rule 16 Conference, and for a temporary stay of discovery pending the Florida Court's resolution of LG's renewed motions and Wi-LAN's motion to compel arbitration. (*See* Florida Case, Dkt. No. 52; *see also* A793.) Wi-LAN then filed its own Rule 26(f) Conference Report - Proposed Scheduling Order on February 22, 2013. (*See* Florida Case, Dkt. No. 54.)

LG subsequently requested that Wi-LAN agree to a 30 day extension to respond to Wi-LAN's Written Discovery on March 4, 2013, but Wi-LAN refused. A109-110 ("[Wi-LAN] will not agree to a 30-day extension"). Accordingly, on March 7, 2013, LG filed a motion for a protective order extending LG's time to

object and to respond to Wi-LAN's Written Discovery, until after the Florida Court resolved LG's dispositive motions and LG's motion to transfer venue and Wi-LAN's motion to compel arbitration. (*See* Florida Case, Dkt. 67.) Wi-LAN twice opposed LG's motions for a stay and for a protective order. (*See* Florida Case, Dkt. Nos. 68, 78.)

Below is a summary of some of the facts demonstrating that Wi-LAN acted inconsistently with the arbitration right it belatedly asserted:

(1) Almost two years after signing the PLA (*see* CA22-35), Wi-LAN invoked the federal judicial process on October 3, 2012 (*see* Florida Case, Dkt. No. 1) and waited more than four months before moving to compel arbitration (*see* Florida Case, Dkt. No. 37);

(2) Wi-LAN failed to mention any arbitration right in any of its complaints or proposed complaints (*see* Florida Case, Dkt. Nos.1; 35 and 36-1; *see also* A792);

(3) Wi-LAN participated in a Rule 26 Conference on February 5, 2013, and did not mention any arbitration right during that meeting (*see, e.g.*, Florida Case, Dkt. No. 54);

(4) Wi-LAN served substantial Written Discovery immediately after the conclusion of the parties' Rule 26 Conference (*see* A68-94);

(5) Wi-LAN served Rule 26 Disclosures on February 19, 2013 (after Wi-LAN moved to compel arbitration) (*see* A102-07);

(6) Wi-LAN's Rule 26 Disclosures (served after Wi-LAN moved to compel arbitration) failed to mention any arbitration right (*see id.*; *see also* A794 n.1);

(7) Wi-LAN refused to agree to a stay of discovery on February 8, 2013 (the day Wi-LAN filed its demand for arbitration in New York City) (*see* A648);

(8) Wi-LAN filed a motion for leave to file a supplemental Second Amended Complaint on February 11, 2013 (after Wi-LAN filed its demand for

arbitration in New York and the same day it filed its motion to compel arbitration) (*see* Florida Case, Dkt. No. 36);

(9) Wi-LAN again refused to agree to a stay of discovery on February 21, 2013 (after filing its motion to compel arbitration on February 11, 2013) (*see* A648);

(10) Wi-LAN unilaterally filed its own Scheduling and Discovery Report and [Proposed] Scheduling Order on February 22, 2013 (after filing its motion to compel arbitration on February 11, 2013) (*see* Florida Case, Dkt. 54);

(11) Wi-LAN represented in its Scheduling and Discovery Report that "Wi-LAN objected to the request for stay," "Wi-LAN opposes any stay of these proceedings," and "Wi-LAN does not believe any such stay is warranted" (*see id.* at 1, 3);

(12) In Wi-LAN's Scheduling and Discovery Report and [Proposed] Scheduling Order, Wi-LAN requested a fact discovery cut-off of September 30, 2013; an expert discovery cut-off of November 29, 2013; and a trial date of February 24, 2014 (*see id.* at 6); and

(13) In Wi-LAN's Scheduling and Discovery Report and [Proposed] Scheduling Order, Wi-LAN stated "… the litigation will have to proceed..." and "Wi-LAN does not believe arbitration will require a stay of these proceedings. The arbitration relates only to LG's license defense with regard to televisions having WiFi. It does not restrict the court from moving forward on the non-Wi-Fi televisions." (*See id.* at 2, 4.)

### E. LG Filed Its Action In The District Court To Enjoin Wi-LAN From Proceeding With The New York Arbitration

In response to Wi-LAN's motion to compel arbitration in the Florida Case, LG asserted that the Florida Court did not have jurisdiction to compel the New York Arbitration to proceed based on the clear language of 9 U.S.C. § 4. (*See* Florida Case, Dkt. No. 56 at 6-7.) On April 4, 2013, LG filed its complaint in the District Court requesting that the District Court enjoin Wi-LAN from proceeding with the New York Arbitration. CA1-20; CA38-77; A793.

Wi-LAN sought to have the Florida Court enjoin LG's action before the District Court (Florida Case, Dkt. No. 82; A267-83; A793). Then, Wi-LAN sought to have the District Court dismiss LG's action. A168-80. The District Court initially stayed the District Court action based on the first-filed rule. A385-89; A793.

### F. Wi-LAN Subsequently Reversed Its Position On LG's Motion To Transfer Venue, LG's Motion To Stay Discovery, And Whether The District Court Had Exclusive Jurisdiction To Enjoin Or Compel The New York Arbitration

On August 2, 2013—seven months after LG originally filed its motion to transfer venue and after Wi-LAN twice opposed LG's motion to transfer venue—Wi-LAN withdrew its opposition to LG's motion to transfer venue (*see* Florida Case, Dkt. No. 107) and the Florida Court granted LG's motion to transfer venue and transferred the case to the District of New Jersey as Case No. 2:13-cv-04895 (D. N.J.) ("New Jersey Case"). (*See* Florida Case, Dkt. No. 108.) Other than LG's renewed motion to transfer, the Florida Court denied all of the other seven pending motions as moot.[4] A793.

---

[4] The following motions were pending in the Florida Court and denied as moot: (1) LG's motion for summary judgment of noninfringement based on license; (2) LG's motion to dismiss Wi-LAN's inducement of infringement claims; (3) LG's motion to stay discovery pending the Florida court's decision on the pending motions; (4) LG's motion for a protective order regarding Wi-LAN's Written Discovery; (5) Wi-LAN's motion to compel arbitration; (6) Wi-LAN's motion for leave to file a supplemental second amended complaint; (7) Wi-LAN's motion to

After Wi-LAN withdrew its opposition to LG's motion to transfer and the action was transferred to the District of New Jersey, Wi-LAN no longer objected to a stay of discovery. (New Jersey Case, Dkt. No. 128.) In addition, Wi-LAN agreed for the first time that only the District Court had jurisdiction to enjoin or compel the New York Arbitration, and filed a cross-motion to compel arbitration in the District Court. *Id.*; *See also* A469-93; A794.

Subsequently, the New Jersey Court denied LG's request to re-file its summary judgment motion, granted the parties' joint request to stay the case (*see* New Jersey Case, Dkt. No. 128), and administratively terminated the case on November 8, 2013, in favor of the District Court's future decision on the arbitration issue.[5]

### G.     The District Court Granted Wi-LAN's Motion To Compel Arbitration And Denied LG's Motion To Enjoin Arbitration

On July 21, 2014, the District Court granted Wi-LAN's motion to compel arbitration and denied LG's motion to enjoin Wi-LAN from participating in the New York arbitration. *LG Electronics,* 2014 U.S. Dist. Lexis 99827; A791-806. The District Court held that Wi-LAN had not waived its right to arbitration, that the claim splitting doctrine was not violated, and that the arbitrator—not the

---

enjoin the District Court Case. (*See* Florida Case, Dkt. Nos. 36, 37, 51, 52, 53, 67, 82.)

[5] The New Jersey Court held, however, that either party could request that the case be reopened. (*See* New Jersey Case, Dkt. No. 129.)

District Court—needed to decide whether the arbitration clause applies because Wi-LAN chose to invoke the "injunctive/equitable relief in a judicial forum" provision of the PLA. *Id.*

The District Court made the following factual findings in support of its waiver holding: (1) "LG has not established that it suffered any prejudice" (A798); (2) "LG has not shown substantive prejudice [because] [n]either the [Florida nor New Jersey Court] ruled on any of LG's substantive motions, and Wi-LAN is thus not attempting 'to use arbitration as a means of aborting a suit that did not proceed as planned' *Cf. Louisiana Stadium*, 626 F.3d at 161" (A798); (3) "All of the motions going to the merits of the case, however, were filed by LG, and thus do not support a finding of waiver" (A799); (4) "Wi-LAN's litigation efforts were not inconsistent with arbitration. Wi-LAN has consistently asserted that its patent-infringement claims relate only to products that are not covered by the PLA, and that those claims, standing alone, are thus nonarbitrable" (A800)[6]; (5) "According to Wi-LAN, when LG filed its motion for summary judgment . . . arguing, to the contrary, that the products at issue are covered by the PLA, an arbitrable dispute arose for the first time as to some of Wi-LAN's claims" (*id.*); and (6) "Given Wi-LAN's consistently held position that none of the televisions are covered by the

---

[6] The District Court stated that it "expresses no opinion as to whether Wi-LAN's position is correct." (*Id.* n. 4.)

17

PLA, nothing about Wi-LAN's previous conduct is inconsistent with its desire to arbitrate the dispute over the interpretation of the PLA" (*id*.).

The District Court stated the following in support of its claim-splitting decision: "The only 'previously filed related claims' in this matter are those stayed in the District of New Jersey. Following this Order, those claims will be submitted to the arbitrator, who will determine which are arbitrable and which are nonarbitrable." (A803-04.)

## IV. STANDARDS OF REVIEW

This Court reviews the District Court's decision as to whether a party has waived its right to arbitrate *de novo*, but reviews the District Court's factual findings on which it relied for clear error. *See PPG Indus., Inc. v. Webster Auto Parts, Inc*., 128 F.3d 103, 109 (2d Cir. 1997). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Zervos v. Verizon New York, Inc*., 252 F.3d 163, 168 (2d Cir. 2001) (quoting *United States v. United States Gypsum Co*., 333 U.S. 364, 395 (1948)). Whether the doctrine of claim splitting is applicable is reviewed *de novo* by this Court. *Kanciper v. Suffolk County Soc. for the Prevention of Cruelty to Animals, Inc*., 722 F.3d 88, 91 (2d Cir. 2013).

## V. SUMMARY OF THE ARGUMENT

This Court should reverse the District Court's holding that Wi-LAN did not waive its arbitration right and that the claim splitting doctrine does not preclude Wi-LAN's request to arbitrate. Public policy and this Court's precedent compel a finding of waiver here because Wi-LAN explicitly and unambiguously expressed an intent to litigate rather than arbitrate and ***because Wi-LAN is the party that originally initiated the lawsuit*** in the judicial forum, before changing course and deciding to pursue arbitration. This Court should also find that Wi-LAN waived its arbitration right because LG, a licensee of Wi-LAN with respect to the Asserted Patents and the Accused Products, has been subject to inherent, substantive and procedural prejudice by Wi-LAN's frivolous lawsuit and subsequent decision to change forums while continuing to aggressively litigate the underlying litigation in District Court. The District Court ignored this highly relevant aspect and made other clearly erroneous factual findings related to its finding that LG had not shown prejudice. Finally, this Court should also hold that Wi-LAN's motion to compel arbitration should be denied as a violation of the claim splitting doctrine.

## VI.  ARGUMENT

### A.  Wi-LAN Waived Its Right To Arbitrate.

#### 1.  This Court's Precedent And Public Policy Compel A Finding Of Waiver Here Because Wi-LAN Demonstrated An Explicit And Unambiguous Intent To Litigate Rather Than Arbitrate

Public policy and this Court's precedent compel a finding of waiver here because Wi-LAN knew of the PLA's arbitration provision, yet repeatedly demonstrated its explicit and unambiguous intent to litigate its claims instead of arbitrating them.  Only after LG moved to dispose of Wi-LAN's case, based on the license included in the PLA, and in order to avoid an adverse ruling from the Florida Court, did Wi-LAN engage in forum shopping by moving to compel arbitration—while also continuing to aggressively litigate its claims before the Florida Court.

This Court has held that the "major purpose" of the Federal Arbitration Act ("FAA") "is 'to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings.'" *Liberian Vertex Transports v. Assoc. Bulk Carriers*, 738 F.2d 85, 87 (2d Cir. 1984) (quoting *Diapulse Corp. v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir. 1980)).  This Court has also held that despite the FAA representing a strong federal policy favoring arbitration, "Standing alone, this policy may not suffice to void [a party's] ***knowing, explicit waiver of arbitration rights***."  *Thomas James Assocs., Inc. v.*

*Jameson*, 102 F.3d 60, 66 (2d Cir. 1996) (citing *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) ("the federal policy favoring arbitration is, at least so far as concerns the interpretation of an arbitration clause, merely a policy of treating such clauses no less hospitably than other contractual provisions.") (emphasis added).[7]

Wi-LAN had actual knowledge of the PLA and its arbitration provision because the same Wi-LAN representative was responsible for both negotiating the PLA with LG and deciding to sue LG in the Florida Court.  (*See* Sec. III (A), *supra*.)  Accordingly, Wi-LAN's decision to voluntarily pursue litigation against LG, instead of arbitration, by filing its complaint in the Florida Court was a knowing and explicit waiver of Wi-LAN's right to arbitrate that "voids" any FAA policy favoring arbitration.  *See Thomas James*, 102 F.3d at 66; *see also Nicholas v. KBR Inc.*, 565 F.3d 904, 908 (5th Cir. 2009) ("We conclude that the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process . . . [S]hort of directly saying so in open court, it is difficult to see how a party could more clearly 'evince [] a desire to resolve [a] . .

---

[7] *Cabinetree* held that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate" and the party opposing arbitration need not show prejudice beyond the prejudice "inherent in an effort to change forums in the middle (and it needn't  be the exact middle) of a litigation."  50 F.3d at 390.

. dispute through litigation rather than arbitration.'") (citation omitted).[8]   Further, consistent with this Court's precedent, holding that a party's decision to withdraw a motion to compel arbitration was an explicit waiver of arbitration and that no prejudice needed to be shown—LG was not required to show prejudice here and the District Court should have held that Wi-LAN, with actual knowledge of the PLA and its arbitration provision, waived its arbitration right by affirmatively filing its complaint against LG.  *See Gilmore v. Shearson/American Express, Inc*., 811 F.2d 108, 112-13 (2d Cir. 1987) (holding that prejudice need not be shown when a party expressly waives arbitration).[9]

---

[8] *See also In re Suprema Specialties, Inc*., Case No. 07-4100-bk, 2008 WL 2629476, *1 (2d Cir. July 1, 2008) ("the parties chose to waive arbitration by proceeding with a court action.").

[9]This is also consistent with other earlier decisions of this Court.  *See, e.g., Nortuna Shipping Co. v. Isbrandtsen Co*., 231 F.2d 528, 529 (2d Cir. 1956) (listing cases and stating "invoking or actively assenting to the jurisdiction of a court, being manifestly inconsistent with an assertion of the right to arbitrate the same dispute, constitutes waiver."); *Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc*., 62 F.2d 1004, 1006 (2d Cir. 1933) ("The state [court] action was indeed a repudiation of the plaintiff's own promise to arbitrate; it gave the defendant an election, taking the plaintiff at its word, to put an end to the arbitration clause, or to insist upon performance."); *Kulukundis Shipping Co., S/A, v. Amtorg Trading Corp*., 126 F.2d 978, 989 (2d Cir. 1942) ("A plaintiff who brought suit on a contract, without seeking to avail himself of its arbitration clause, has been held to have waived his rights thereunder, so that he could not subsequently, after a long delay, ask the court, under Section 3, to stay the action pending arbitration."); *see also Khan v. Parsons Global Servs., Ltd*., 521 F.3d 421, 425 (D.C. Cir. 2008) ("A finding of prejudice is not necessary in order to conclude that a right to compel arbitration has been waived, although 'a court may consider prejudice to the objecting party as a relevant factor' in its waiver analysis."); *Reid Burton Constr.,*

To hold otherwise would allow a party to initially elect to sue in a judicial forum even though it was contractually obligated to arbitrate, and then later, after being dissatisfied with the first forum, to choose a second arbitration forum, without any consequences.  Such a result undermines the FAA's fundamental policy aimed at saving parties time and money (*see Liberian*, 738 F.2d at 87), and promotes costly and prejudicial forum shopping.  *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 441 (2d Cir. 1995) (denying a party's attempt to invoke the federal courts to compel arbitration after it previously participated in state court litigation, and stating that the case was just "about forum-shopping, by one and all.").

Moreover, anything other than a finding of waiver based on the facts of record runs contrary to fundamental contract jurisprudence, and conflicts with this Court's teachings that arbitratable agreements should be treated like any other contracts, *i.e.,* that an arbitration right can be revoked or waived by a party electing to litigate instead of arbitrate.  *See Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486, 490 (2d Cir. 2010) ("'There is nothing irrevocable about an agreement to arbitrate.' 'Both of the parties may abandon this method of settling their differences, and under a variety of circumstances one party may waive or

---

*Inc. v. Carpenters District Council of So. Colo*., 614 F.3d 698, 701-02 (10th Cir. 1980) (prejudice not required).

destroy by his conduct his right to insist upon arbitration.'") (citations omitted).

A finding of waiver based on Wi-LAN's explicit and unambiguous decision to litigate rather than arbitrate is also consistent with the leading treatises on contracts and arbitration. *See* E. Allan Farnsworth, Contracts, § 8.5 at 564 ("The word election signifies a choice, one that is often binding on the party who makes it. When the time for occurrence of a condition has expired, the party whose duty is conditional has a choice. He can take advantage of the nonoccurrence of the condition and treat his duty as discharged, or he can disregard the nonoccurrence of the condition and treat his duty as unconditional. Courts often hold that a party who chooses to disregard the nonoccurrence of a condition is bound by his election to treat his duty as unconditional; he cannot reinstate the condition even if the other party has not relied on this choice."); *see also* 2 Ian R. Macneil, Richard E. Speidel & Thomas J. Stipanowich, Federal Arbitration Law: Agreements, Awards, and Remedies Under the Federal Arbitration Act § 21.3.3 (1994) (supporting abolition of prejudice requirement and stating "As a matter of arbitration policy, the current judicial approach to waiver seems unsatisfactory. The requirement of prejudice, particularly in courts loathe to find prejudice, protects the federal contract right at a considerable cost to efficiency. The current approach tends to encourage litigation of whether a waiver in fact occurred. It sometimes permits a party who has chosen to engage in litigation to stop, demand arbitration, and move to another forum.

And it often permits a defending party to waste much time and sometimes considerable effort by the other and even gain litigation advantage before demanding arbitration. Present waiver doctrine thus allows a great deal of laxity in enforcing arbitration rights. All this appears to be the exact opposite of what parties desire when they agree to arbitrate – delay instead of speed, formality instead of informality, and complexity instead of simplicity.").[10]

### 2. This Court's Precedent Demonstrates That Wi-LAN's Status As The Party Who First Chose To Litigate And Later Chose To Arbitrate Is Highly Suggestive Of A Finding Of Waiver

A finding of waiver is also in line with this Court's ***only two*** holdings that address a waiver of arbitration when a party seeks to compel arbitration after it initially filed a court action in contravention of the parties' prior agreement to arbitrate. *See La. Stadium & Exposition v. Merril Lynch & Co.*, 626 F.3d 156, 160-61 (2d Cir. 2010) ("***Lastly, it is significant that LSED is a plaintiff, rather than a defendant, moving for arbitration***. . . . [W]e also note that by filing its lawsuit and litigating it at length, LSED 'acted inconsistently with its contractual

---

[10] Based on these arguments and a circuit split on whether a party asserting waiver needs to show prejudice, the U.S. Supreme Court granted a petition for a writ of certiorari presenting the question: "Under the Federal Arbitration Act ("FAA"), should a party be required to demonstrate prejudice after the opposing party waived its contractual right to arbitrate by participating in litigation, in order for such waiver to be binding and irrevocable." *Stok & Assocs., P.A. v. Citibank, N.A.*, 131 S.Ct. 1556 (2011). That case was dismissed by agreement of the parties (*see* 131 S.Ct. 2955), but the petition sought to have the Supreme Court decide that an opponent of arbitration need not show prejudice in support of a finding of waiver.

right to arbitration.'" (internal citations omitted) (emphasis added))[11]; *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 49 F.Supp.2d 331, 341 (S.D.N.Y. 1999) *aff'd*, Case No. 99-7638, 1999 U.S. App. Lexis 32546 (2d Cir. Dec. 15, 1999) ("This conclusion is particularly appropriate given SATCOM's status as plaintiff. ***The touchstone of waiver is the taking of action inconsistent with the right to arbitrate.*** Customarily, waiver is urged against the defendant and the inquiry for the court is whether the defendant litigated enough and the other side has suffered sufficient prejudice such that the defendant's waiver of the right to arbitrate may be inferred. ***Rarely does a plaintiff begin a litigation on the merits***

---

[11] *Louis Drefus Negoce S.A. v. Blystad Shipping & Trading Inc*., 252 F.3d 218, 229 (2d Cir. 2001) never specifically addresses the fact that it was the party who initially filed a lawsuit who then later sought to arbitrate and is inapposite. The *Louis Dreyfus* case involved a charter of vessel agreement with a broad arbitration clause that required arbitration in New York, along with a collateral letter of indemnity agreement that required litigation in London. *See Id.* at 172-75. The party seeking to arbitrate in New York first filed a lawsuit in London pursuant to the letter of indemnity agreement and a week later filed a request to arbitrate in New York pursuant to the charter agreement, the principal agreement between the parties. *Id.* The *Louis Dreyfus* court found that the charter agreement's arbitration provision was broader than the letter of indemnity provision, that the letter of indemnity was a subsidiary agreement to the charter agreement, and that any claim brought under the letter of indemnity in London was subsumed by the New York arbitration provision. *Id.* In *Louis Dreyfus*, the party seeking arbitration did not revoke a prior agreement. *Id.* Here, there is only one patent license agreement and Wi-LAN did not follow the arbitration terms of that sole agreement. Instead, it elected to file a lawsuit.

*and then alter course and attempt to compel an arbitration*.") (emphasis added).[12]

As in *La. Stadium* and *Satcom*, the situation here is precisely one of those rare exceptions where Wi-LAN's deliberate initiation of a district court litigation followed by its later request to arbitrate can lead to only one conclusion—Wi-LAN waived its right to arbitrate. *Satcom*, 49 F.Supp. 2d at 341 (holding that when a ***plaintiff*** commences litigation and then seeks to arbitrate, a finding of waiver is "particularly appropriate" because "the Court need not examine the record to determine whether" the plaintiff intended to litigate, "[i]nstead, there is on the face of the complaint ***clear evidence of the plaintiff's conscious decision to litigate rather than arbitrate this dispute***.") (emphasis added).

The majority of this Court's waiver of arbitration cases involve a very different situation in which a defendant moves to compel arbitration after being sued in court. *Satcom*, 49 F.Supp. 2d at 341 ("Customarily, waiver is urged against the defendant and the inquiry for the court is whether the defendant litigated enough and the other side has suffered sufficient prejudice such that the defendant's waiver of the right to arbitrate may be ***inferred***.") (emphasis added). Of course, a defendant in that scenario is a much more sympathetic party than the plaintiff who ***expressly*** chooses a judicial forum instead of arbitration only to later

---

[12] Indeed, in each of the five cases cited by the District Court in support of its proposition that "the Second Circuit has resolved the issue of litigation-conduct waiver on numerous occasions," the Second Circuit found waiver. A796-97.

change course after seeing that the litigation is not going as planned because of the inherent prejudice to the defendant involved in the latter.

The District Court's Opinion does not address the fact that in *La. Stadium* it was the party who ***initiated*** the litigation that then sought arbitration. (*See* A798-99.) Indeed, it does not even cite to *Satcom*. (*See generally*, A791-805.) Instead, the District Court focused on cases that addressed only whether a ***defendant*** had waived its right to arbitrate. As this Court has always held that a plaintiff waived its arbitration rights where it first sought litigation in contravention of an arbitration provision ***and*** then sought arbitration, the District Court's decision failed to follow this Court's precedent and should be reversed.

### 3. The District Court Clearly Erred In Finding That LG Has Not Been Prejudiced

To the extent the Court deems that prejudice is not presumed based on Wi-LAN's explicit and unambiguous intent to litigate rather than arbitrate and its subsequent forum shifting, the District Court clearly erred in finding that LG had not been prejudiced. A798. This Court has held that a party to litigation waives its right to arbitrate when it engages in conduct that is "inconsistent with its contractual right to compel arbitration and . . . [the opposing party] was prejudiced by this conduct." *PPG*, 128 F.3d at 104. Prejudice has been defined by this Court as "the inherent unfairness—in terms of delay, expense, or damage to a party's

legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* at 107.

As a threshold matter, the inherent unfairness to which LG has been exposed is overwhelming when put in the proper context that LG continues to pay royalties to Wi-LAN under the PLA with respect to the Asserted Patents and the Accused Products. (*See* CA24-26.) Since 2010, LG has paid and continues to pay millions of dollars to Wi-LAN in connection with the PLA. CA26. Yet, with actual knowledge that LG is licensed under the PLA, and that the PLA contains an arbitration provision (*see* Sec. III (A), *supra*), Wi-LAN intentionally sued LG in the Florida Court for infringement of licensed patents based on LG's sale of licensed products. (*See* Sec. III(B), *supra*.) Then, when LG attempted to dispose of the case by filing a case-dispositive motion for summary judgment based on the PLA, Wi-LAN moved to compel arbitration but continued to aggressively litigate the Florida Case. (*See* Secs. III(B-D), *supra*.)

LG should be fully empowered to terminate Wi-LAN's frivolous court action by filing a case-dispositive motion without fear that Wi-LAN would reverse course and attempt to invoke the parties' arbitration agreement at a later date— which is exactly what Wi-LAN did. During the ensuing twelve months the parties vigorously litigated many issues while LG continued to pay royalties pursuant to the PLA. (*See* Sec. III (D), *supra*; CA26.) LG has suffered prejudice by being

dragged into court and then arbitration by Wi-LAN when throughout this ordeal LG's Accused Products have been licensed under Wi-LAN's Asserted Patents.  Put simply, LG has been prejudiced because, despite complying with all of its responsibilities under the PLA, LG has received none of the intended risk and litigation protection it bargained for in its PLA with Wi-LAN.  *See Intel Corp. v. Negotiated Data Solutions, Inc*., 703 F.3d 1360, 1367 (Fed. Cir. 2012) ("To interpret the Agreement otherwise would allow the unilateral act of the licensor to place the licensee, which sought to eliminate any infringement risk and effect a global peace with the licensor for all claims in all patents, in a position of being exposed to further risk relating to the exact same inventions that were subject to the license.").

The record also supports that LG has been subjected to other substantive and procedural prejudice.  First, by Wi-LAN's aggressively litigating the underlying court action, propounding discovery, and refusing to stay the court action after commencing arbitration, Wi-LAN forced LG to litigate numerous stay and protective order motions.  (*See* Sec. III (D), *supra*.)  Second, Wi-LAN twice vigorously opposed LG's motion to transfer and many months later withdrew its opposition to LG's motion to transfer, which led to the Florida Court granting LG's motion to transfer and transferring the underlying action to New Jersey.  (*See* Secs. III (D and F), *supra*.)  Third, LG filed a case-dispositive summary judgment

motion, and Wi-LAN should not be able to demand arbitration to avoid an adverse ruling it sensed was coming. (*See* Secs. III (B and C), *supra*.) Fourth, Wi-LAN vexatiously abused the litigation and arbitration process to LG's detriment by consistently changing course after forcing LG to expend resources to litigate multiple motions and issues to which Wi-LAN later stipulated. (*See* Sec. III (F), *supra*.) Fifth, allowing Wi-LAN to arbitrate at this point would permit Wi-LAN to litigate similar issues in two forums and lead to the possibility of inconsistent results.[13]

---

[13] For example, Wi-LAN has previously contended that the parties should simultaneously arbitrate and litigate its infringement claims, and LG's defense to those claims, against the only Accused Products. (*See* Florida Case, Dkt. 54.) Wi-LAN's future attempts to flip-flop between arbitration and federal court litigation will continue to inflict harm on LG. Wi-LAN will attempt to reopen the underlying litigation, attempt to accuse additional products, and, if successful, potentially seek to have those new products moved to arbitration while the re-opened litigation proceeds in parallel. A486 at 13 ("whereas the merits of Wi-LAN's patent infringement claims . . . are solely within the province of the stayed New Jersey Action"); *id.* at 18 n. 7 ("Discovery was, and remains, warranted."); *see also Satcom*, 49 F. Supp. 2d at 338-39 ("There is no provision in the Licensing Agreements to permit a party to make the choice between litigation and arbitration a second time for the same dispute, or to jump back and forth between the two options for dispute resolution at its whim **. . .** Having made this choice, it has no right under the agreements to abandon this litigation and start afresh with an arbitration.").) If the Court does not reverse the District Court's holding of waiver, then Wi-LAN will be allowed to continue its vexatious conduct, and LG will be forced to participate in more arbitrations that are duplicative of the underlying litigation—while LG pays millions in royalties, under the very PLA Wi-LAN ignored. The cost to defend both would be excessive. In sum, the Court should hold that Wi-LAN waived any right to arbitrate.

In support of its waiver holding, the District Court also made certain clearly erroneous factual findings. For example, the District Court clearly erred by: (1) finding that the underlying courts did not rule and needed to rule on the pending motions for LG to show prejudice (*see* A798 ("LG has not shown substantive prejudice [because] [n]either the [Florida nor New Jersey Court] ruled on any of LG's substantive motions")); (2) finding that the motions going to the merits of the case cannot support a finding of prejudice because they were filed by LG (*see* A799 ("All of the motions going to the merits of the case, however, were filed by LG, and this do not support a finding of waiver"); (3) crediting Wi-LAN's position that its litigation efforts were not inconsistent with arbitration despite undisputed evidence to the contrary, and despite stating that it took no position on whether Wi-LAN's position was correct, while at the same time failing to consider LG's position that Wi-LAN had sued LG over licensed products and that Wi-LAN's actions were inconsistent with arbitration (*see* A800, n.4); and (4) crediting Wi-LAN's position that an arbitrable dispute first arose when LG filed its motion for summary judgment based on license despite Wi-LAN having actual knowledge of the PLA and accusing only licensed products in its now three filed complaints (*see* *id.*).

The District Court clearly erred in finding that the underlying courts did not rule on any pending motions, needed to rule on the pending motions, and that the

pending motions going to the merits had to be filed by Wi-LAN for LG to show prejudice. A798. The Florida Court did rule on LG's motion to transfer venue (*see* Florida Case, Dkt. No. 108) after Wi-LAN twice opposed LG's motion (*see* Florida Case, Dkt. Nos. 40, 66), but then withdrew its opposition many months later (*see* Florida Case, Dkt. No. 107). A793. Then, despite acknowledging that eight motions were pending in the Florida Court when the Florida Court issued its transfer order, the District Court also erroneously found that the other seven motions (two of which were dispositive) needed to be ruled on, and that any merit-related motions needed to be filed by Wi-LAN (not LG) for LG to show prejudice. A798.

Such a finding is directly contradicted by this Court's precedent and is therefore clearly erroneous. The ***filing*** of a dispositive motion by either party, ***alone***, may establish substantive prejudice. *See Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) ("Sufficient prejudice to infer waiver has been found when a party . . . makes motions going to the merits of an adversary's claims"). However, the filing of such motions is not required, let alone that the court rule on the motions. *See In re S&R Co. of Kingston*, 159 F.3d 80, 84 (2d Cir. 1998) ("We have found no case that supports the argument that such [litigation of dispositive] motions [is] required before waiver can be found."); *see also Satcom*, 49 F.Supp.2d at 340 ("there is no requirement that the party against whom waiver is urged have made

33

dispositive motions . . . Instead, a filing of pleadings, exchange of discovery, settlement conferences, and litigation of lesser issues related to the issues may be significant.") (citations omitted).[14]

The correct standard is litigation of "substantial issues going to the merits." *Id.* (holding that the filing of a counterclaim, extensive discovery requests, two settlement conferences, and an attempt to dismiss and stay the action "certainly pertained to substantial issues going to the merits"); *see also La. Stadium*, 626 F.3d at 160 (finding that the party opposing arbitration was prejudiced because it spent a significant amount of time and expense litigating non-dispositive motions and had achieved MDL consolidation). Under the correct standard, the parties clearly

---

[14] The District Court compounded its clear error by misinterpreting this Court's law regarding substantive prejudice and by confuscating it with the *La. Stadium* holding. *See* A798-99 (finding that because the underlying courts did not rule on LG's substantive motions Wi-LAN is "not attempting to use arbitration as a means of aborting a suit that did not proceed as planned."). Notably, in *La. Stadium* the underlying court never ruled on any motions going to the merits; the party opposing arbitration merely threatened to file such a motion in a lengthy letter. *La. Stadium*, 626 F.3d at 160. Moreover, a review of the *La. Stadium* decision shows that the quotation the District Court uses is followed by a quotation from the Seventh Circuit's *Welborn Clinic* case that simply states "We do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration." *Id*. at 161. The Seventh Circuit does not require prejudice to find a waiver of arbitration, and there is nothing in the *La. Stadium* decision that holds that a ruling on a substantive motion is needed for substantive prejudice to be found. Moreover, Wi-LAN moved to compel arbitration to avoid the underlying court granting LG summary judgment.

litigated substantial issues going to the merits. Indeed, the District Court agreed: "the parties did expend time and effort litigating during that time period." A798.[15]

The District Court also clearly erred in finding that Wi-LAN's initial litigation efforts were not inconsistent with its later arbitration request because an arbitrable despite arose only when LG moved for summary judgment based on license. A800. The District Court's findings were clearly erroneous because the undisputed evidence offered by LG clearly repudiates such a finding, and because the District Court credited Wi-LAN's position despite stating it took no position on whether it was correct (*see* A800 n. 4), yet ignored LG's contrary, correct position.

The District Court acknowledged LG's position that the accused televisions are covered by the PLA. *See* A792. It is undisputed that the Prior Litigation resulted in the 2010 PLA, in which Wi-LAN granted to LG a license to virtually all of Wi-LAN's then-owned and future-acquired patents (including the Asserted

---

[15] In the cases cited by the District Court, all involving a defendant moving to compel arbitration, fairness dictates that a plaintiff should not be permitted to preemptively engage in heavy litigation to bolster its argument that the defendant waived its right to arbitrate. If the law permitted such behavior, then a plaintiff could unilaterally circumvent an arbitration agreement through aggressive litigation. The same reasoning should not apply here. Where a plaintiff chooses to file suit in federal court, despite the existence of an arbitration agreement, the law should permit the defendant to rely on the plaintiff's election to litigate as opposed to arbitrate the issue and attempt to dispositively terminate the case without fear that the plaintiff will reverse course and attempt to invoke the parties' arbitration agreement at a later date. Accordingly, the time and expense expended by LG as a result of its own litigation activities constitute prejudice sufficient to sustain a waiver holding.

Patents) covering LG's wireless (Wi-Fi-compliant) products, and that all three of Wi-LAN's complaints listed only a single accused product line of televisions that is Wi-Fi compliant (*see* Florida Case, Dkt. No. 1 ¶¶ 10, 15).[16]  (*See* Sec. III (B), *supra*.)  Yet, the District Court credited only Wi-LAN's unsupported position that its infringement claims are not arbitrable and that its claims that related to arbitrable products only arose when LG filed its summary judgment motion. A800.  Such a finding ignores the undisputed evidence concerning the PLA, Wi-LAN's complaints, and LG's position, and erroneously appears to insert a subjective determination into the waiver analysis when the District Court stated it expressed no opinion on Wi-LAN's position.  *Id.*  The District Court's approach also erroneously places the onus on LG to apprise Wi-LAN of Wi-LAN's alleged arbitration rights based on an agreement ***to which Wi-LAN is a party***.  But LG has no obligation to inform Wi-LAN of its alleged rights under the parties' agreement, and the District Court should not permit Wi-LAN to feign ignorance regarding the contents of an agreement that it signed several years earlier.  *See La. Stadium*, 626 F.3d at 160-61 ("If [plaintiff] had sufficient information to hale [defendant] into federal court, it should also have been aware that it could arbitrate its claims against [defendant].").  Put simply, Wi-LAN was aware, or should have been aware, of its alleged arbitration rights at the time it signed the PLA—***more than***

---

[16] *See also* Florida Case, Dkt. 35  ¶¶ 10, 18; Dkt. 36-1 ¶¶ 10, 21 (Wi-LAN's First Amended Complaint and Proposed Second Amended Complaint).

*two years before it moved to compel arbitration*, or at least as of the time it drafted

its Florida Court complaint against LG that alleged infringement of products that

practice the very same Wi-Fi standards licensed under the parties' PLA—*more*

*than four months before it moved to compel arbitration*.  (*See* Sec. III(A), *supra*.)

> **B.  The Claim Splitting Doctrine Prevents Wi-LAN From Litigating And Arbitrating The Same Patent Infringement Claims Thereby Requiring That Wi-LAN's Motion To Compel Arbitration Be Denied As A Matter Of Law.**

Wi-LAN should also be enjoined from proceeding with the New York

Arbitration under the doctrine of claim splitting.  "Th[e] rule against claim splitting

'is based on the belief that it is fairer to require a plaintiff to present in one action

all of his theories of recovery relating to a transaction, and all of the evidence

relating to those theories, than to permit him to prosecute *overlapping or repetitive*

*actions* in different courts or at different times.'"  *AmBase Corp. v. City Investing*

*Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003) (citations omitted) (emphasis

added).  Wi-LAN is attempting to do exactly that, by simultaneously pursuing its

patent infringement claim in both the New Jersey Court *and* the New York

Arbitration.

The doctrine of claim splitting asks "whether the first suit, assuming it were

final, would preclude the second suit."  *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th

Cir. 2011);[17] *Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929 (N.D. Ill. 2006) ("Unlike *res judicata*, … courts have applied the doctrine of claim splitting before there is a final judgment in a prior action"); *see also Fujitsu Ltd. v. Tellabs Operations, Inc.*, Case No. 12C3229, 2013 U.S. Dist. LEXIS 12142, *7-11 (N.D. Ill. Jan. 30, 2013) (dismissing-in-part the complaint in second filed action under doctrine of claim splitting because the same patents and products were at issue in the earlier filed action and the later action arose from the same transactional facts); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1058-59 (S.D. Cal. 2007) (dismissing complaint in later action under doctrine of claim splitting).

The District Court made the following clearly erroneous factual finding in support of its claim splitting decision: "The only 'previously filed related claims' in this matter are those stayed in the District of New Jersey.  Following this Order, those ***claims*** will be submitted to the arbitrator, who will determine which are arbitrable and which are nonarbitrable."  A803-04 (emphasis added).  The District Court's finding exposes a fundamental and clear error in the Court's analysis that is inconsistent with Wi-LAN's position and Wi-LAN's arbitration request.

---

[17] At least one court within the Second Circuit has cited with approval and applied the *Katz* claim splitting test set.  *See Kanciper v. Suffolk County Soc. for the Prevention of Cruelty to Animals, Inc.*, Case No. 12-CV-2104(ADS)(ARL), 2013 WL 673740, at *18 (E.D.N.Y. Feb. 23, 2013) ("Although it does not appear that the Second Circuit has expressly embraced this notion, the Court finds the Tenth Circuit's analysis in *Katz* to be persuasive.").

Specifically, according to Wi-LAN, the arbitrator will only determine whether the Accused Products are arbitrable, not whether Wi-LAN's ***patent infringement claims*** are arbitrable. Indeed, the District Court recognized Wi-LAN's position and this distinction earlier in its decision in a section unrelated to its claim splitting discussion: "Wi-LAN's litigation efforts were not inconsistent with arbitration. Wi-LAN has consistently asserted that its patent-infringement claims relate only to ***products*** that are not covered by the PLA, and that those claims, standing alone, are thus nonarbitrable." A800 (emphasis added).

Based on that finding, Wi-LAN's actions boil down to an improper attempt to split each of its two patent infringement claims[18] along the boundary of wireless v. still unidentified (non-asserted) non-wireless products. On one hand, Wi-LAN has requested that the New York Arbitration decide whether wireless products are subject to the PLA and thus cannot infringe because they are licensed products, while requesting, on the other hand, that the New Jersey Court decide whether unknown non-wireless products that Wi-LAN has never identified in any one of its ***three*** complaints, infringe. (*See* Florida Case, Dkt. Nos.1; 35 and 36-1; *see also* A792.) Both categories of accused products are part of the ***same*** patent

---

[18] The two claims that are at issue in the underlying litigation are for patent infringement of U.S. Patent Nos. 6,359,654 and 7,034,889, respectively. The Federal Circuit defines a "claim" as a "cause of action." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 478 (Fed. Cir. 1991).

infringement claim (*i.e.*, cause of action) for each Asserted Patent. *See Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits.").

The District Court's discussion of the Supreme Court's endorsement of piecemeal resolution of claims pursuant to the FAA also supports LG's position. A804. Those cases deal with the FAA permitting the arbitration of some *claims* and the litigation of other *claims*. *Id.* Here, Wi-LAN is seeking to arbitrate and litigate the *same claim*, and Wi-LAN cannot split a single claim for patent infringement into two claims by dividing it into two categories of accused products.

The District Court's Opinion also made a clear error in finding that Wi-LAN did not split its own claims between arbitration and litigation because it is LG's license defense that Wi-LAN is seeking to arbitrate. A804-05 (*citing Danny's Const. Co., Inc. v. Birdair, Inc.*, 136 F. Supp. 2d 134, 146 (W.D.N.Y. 2000).) Specifically, the District Court relied upon *Danny's Construction* to support its conclusion that "claim splitting has been rejected as a defense to arbitration in this circuit in the past." In the *Danny's Construction* case, however, the court concluded that the defendant did not split its own claim because it was the *plaintiff's claim* that defendant sought to resolve through arbitration. *Id.*

("[Plaintiff] paints in very broad strokes and fails to address a critical point: [defendant] has *not* demanded that [plaintiff] arbitrate part of a claim that [defendant] has against [plaintiff]; rather, [defendant] has demanded that [plaintiff] arbitrate part of a claim that [plaintiff] has against [defendant]. Specifically, [defendant] has demanded that [plaintiff] arbitrate [plaintiff's] claim that arises from the AMW-made steel trusses. Thus, [defendant] has not split its own claim against [plaintiff].").

Here, on the other hand, Wi-LAN, the original ***plaintiff***, is attempting to resolve a portion of ***its own affirmative patent infringement claims*** through arbitration. The relevant Patent Statute regarding patent infringement states that "whoever ***without authority***, makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271 (emphasis added). The critical "without authority" language depends upon whether Wi-LAN ***authorized*** LG to commit the allegedly infringing acts, *i.e.*, ***whether Wi-LAN granted LG a license***. Accordingly, *Danny's Construction* is inapposite because Wi-LAN has attempted to split its ***own*** patent infringement claims.

41

## VII. CONCLUSION

For the foregoing reasons LG respectfully requests that the Court reverse the District Court's ruling and find that Wi-LAN waived its arbitration right and that Wi-LAN is precluded from arbitration based on the claim-splitting doctrine.

Respectfully submitted,

DATED: November 14, 2014

By /s/ James J. Lukas, Jr.

Richard D. Harris
James J. Lukas, Jr.
Mathew J. Levinstein
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 465-8400
Facsimile: (312) 456-843
*Attorneys for Plaintiffs-Appellants*
*LG Electronics, Inc. and LG Electronics*
*U.S.A., Inc.*

42

## <u>CERTIFICATE OF COMPLIANCE</u>

(1)    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a) (7) (B) because it contains **9,091** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

(2)    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman.

/s/ James J. Lukas, Jr.
James J. Lukas, Jr.

**SPECIAL APPENDIX**

i

## <u>TABLE OF CONTENTS TO SPECIAL APPENDIX</u>

Doc. 50   Opinion and Order entered on July 21, 2014 ........................................................SPA-01

Doc. 51   Judgment entered on July 21, 2014......................................................................SPA-16

SPA-01

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                 :

LG ELECTRONICS, INC. and LG           :
ELECTRONICS U.S.A., INC.,             :

                       Plaintiffs,     :

                                   :

             -v-                 :

                                   :

WI-LAN USA, INC. and WI-LAN, INC.,   :

                                   :

                   Defendants.    :

                                   :
-------------------------------------------------------X

No. 13-cv-2237-RA

OPINION AND ORDER

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/21/14

RONNIE ABRAMS, United States District Judge:

       Plaintiffs, LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "LG"), seek

a declaratory judgment that their patent dispute with defendants, Wi-LAN USA, Inc. and Wi-

LAN, Inc. (collectively "Wi-LAN"), is nonarbitrable and request that the Court enjoin Wi-LAN

from proceeding with arbitration. Wi-LAN moves to compel arbitration. For the reasons that

follow, Wi-LAN's motion to compel arbitration is granted and the case is dismissed.

## BACKGROUND

**I.     The Patent License Agreement**

       On December 21, 2010, Wi-LAN and LG entered into a patent license agreement ("the

PLA"). (Dallow Decl. Ex. A.) The PLA grants LG licenses to "make, have made, import, use,

lease, offer for sale, sell, transfer and/or otherwise dispose of" products containing technology

under patents controlled by Wi-LAN. (Id. at Ex. A ¶¶ 2.1-2.2.) The PLA contains an arbitration

clause that provides as follows:

                 Any dispute, controversy, or difference which may arise between
                 any Parties out of or in relation to or in connection with the
                 interpretation of this Agreement or any breach of this Agreement

shall be settled amicably between the Parties, but in the event no
amicable settlement can be reached, shall be finally settled by
arbitration in the City of New York, U.S.A. which arbitration shall
be administered by JAMS pursuant to its Comprehensive
Arbitration Rules and Procedures. . . . Notwithstanding anything
contained in this Agreement to the contrary, any Party may seek
injunctive or other equitable relief whenever the facts or
circumstances would permit such Party to seek such equitable
relief in a court of competent jurisdiction whether in lieu of, in
addition to, or prior to the initiation of any arbitration as set forth
below.

(Dallow Decl. Ex. A ¶ 8.3 (hereinafter, the "Arbitration Clause").)

## II.   Procedural History

The dispute between the parties initially arose in 2012 with a disagreement regarding

LG's manufacture, sale, and importation of certain digital flat-panel televisions. A complicated

procedural history followed, involving proceedings in three different jurisdictions.

On October 3, 2012, Wi-LAN filed a complaint in the Southern District of Florida (the

"Florida Complaint") asserting patent-infringement claims against LG. (Wi-LAN, Inc. v. LG

Electronics, Inc., No. 12 Civ. 23611, Dkt. 1 (S.D.Fl.).) The Florida Complaint alleged that LG

was infringing on two of Wi-LAN's patents for video display technology. (No. 12 Civ. 23611,

Dkt. 1 ¶¶ 6-8, 10-11, 15-16 (S.D.Fl.).) Specifically, it asserted that "LG is making, using,

offering to sell, selling and/or importing" infringing products, "including but not limited to the

6200 series of flat panel televisions." (Id. ¶ 10.) The Florida Complaint did not mention the

PLA.

On January 25, 2013, LG filed both a motion to dismiss and a motion for summary

judgment. (No. 12 Civ. 23611, Dkt. 22, 25 (S.D.Fl.).) LG asserted that the televisions at issue

are "wireless products" covered by the PLA, and that it is therefore entitled to manufacture, sell,

and import them. (Def.'s Mem. of Law 1; Pl.'s Opp'n 6.) LG also filed motions to transfer

venue to the District of New Jersey and to stay discovery. (No. 12 Civ. 23611, Dkt. 30, 34 (S.D.Fl.).)

On February 8, 2013, approximately four months after first filing the Florida Complaint, but only two weeks after LG first argued that the televisions are covered by the PLA, Wi-LAN invoked the PLA's Arbitration Clause by submitting an arbitration demand to JAMS and requesting that "the arbitrator determine the proper interpretation of the PLA." (Harris Decl. Ex. 3 at 5.) On February 11, 2013, Wi-LAN filed a motion to compel arbitration, a first amended complaint, a motion for leave to file a second amended complaint, and oppositions to three of LG's motions. (No. 12 Civ. 23611, Dkt. 35-38, 40-41 (S.D.Fl.).) In response to Wi-LAN's first amended complaint, the Florida court denied LG's four pending motions as moot, all of which LG subsequently refiled. (No. 12 Civ. 23611, Dkt. 43-44, 49, 51-53 (S.D.Fl.).) LG also moved for a protective discovery order. (No. 12 Civ. 23611, Dkt. 67 (S.D.Fl.).)

On April 4, 2013, LG filed an action in this Court seeking declaratory and injunctive relief to prevent arbitration from going forward. (No. 13 Civ. 2237, Dkt. 1-2 (S.D.N.Y.).) In response, Wi-LAN filed an emergency motion in the Florida court, urging it to enjoin LG from proceeding with its action in this Court. (No. 12 Civ. 23611, Dkt. 82 (S.D.Fl.).) On April 22, 2013, this Court issued a stay, concluding that the first-filed rule required the Florida court to determine, as an initial matter, whether it or this Court should resolve the issue of arbitration. (No. 13 Civ. 2237, Dkt. 30 (S.D.N.Y.).)

On August 2, 2013, Wi-LAN withdrew its opposition to LG's motion to transfer venue and, on August 13, 2013, the district court in Florida transferred the case to the District of New Jersey. (No. 12 Civ. 23611, Dkt. 107-08 (S.D.Fl.).) At the time of transfer, eight motions were fully briefed and pending in the Florida action: LG's renewed motion for summary judgment,

LG's renewed motion to dismiss, LG's renewed motion to transfer venue, LG's two discovery motions, Wi-LAN's motion to compel arbitration, Wi-LAN's motion to file a second amended complaint, and Wi-LAN's motion for an injunction.  (No. 12 Civ. 23611, Dkt. 49-97 (S.D.Fl.).)  The parties, however, had engaged in only limited discovery.[1]

On October 25, 2013, the parties advised this Court and the district court in New Jersey that they both agreed that this Court should decide the issue of arbitration, because—under Third Circuit law—a district court in New Jersey cannot compel arbitration outside of New Jersey.  (Wi-LAN, Inc. v. LG Electronics, Inc., No. 13 Civ. 04895, Dkt. 128 (D.N.J.); No. 13 Civ. 2237, Dkt. 36 (S.D.N.Y.).)  Accordingly, the district court in New Jersey stayed that action pending this Court's ruling on the issue of arbitration.  (No. 13 Civ. 04895, Dkt. 129 (D.N.J.).)  Wi-LAN subsequently filed the present motion to compel arbitration.

## DISCUSSION

### I.      The Federal Arbitration Act

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "creates a body of federal substantive law . . . applicable to arbitration agreements, such as the one at issue here, affecting interstate commerce."  Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006) (alterations in original) (internal quotation marks omitted).  The FAA embodies "a liberal federal policy favoring arbitration agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).  The Supreme Court, accordingly, has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," id. at 24-25, and that generally "the party resisting arbitration bears the burden of

---

[1]  Wi-LAN had made initial disclosures pursuant to Federal Rule of Civil Procedure 26, but LG had not yet made initial disclosures.  (Harris Decl. Ex. 4; Defs.' Mem. of Law 18-19.)  In addition, Wi-LAN had served LG with initial interrogatories and document requests, to which LG had not responded.  (Harris Decl. Exs. 1-2; Defs.' Mem. of Law 18-19; Reply 1.)

proving that the claims at issue are unsuitable for arbitration," Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000). Nonetheless, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

## II.    Waiver of the Right to Arbitrate

At the outset, LG argues that Wi-LAN waived its right to enforce the Arbitration Clause by initiating and actively pursuing litigation in Florida. (Pls.' Opp'n 13.) In response, Wi-LAN contends that LG's waiver defense must be resolved by the arbitrator instead of the Court, and, in any event, that its actions were not inconsistent with arbitration. (Defs.' Mem. of Law 13-19.) For the reasons that follow, the Court decides the issue of whether Wi-LAN has waived its right to arbitrate and concludes that it has not.

### A.    Who Should Decide Waiver

The parties first dispute who should resolve the issue of whether Wi-LAN has waived its right to arbitrate by initiating litigation, the Court or the arbitrator.

Traditionally, courts, not arbitrators, have decided claims of waiver of the right to arbitrate based on participation in protracted litigation. Indeed, the Second Circuit has explicitly held that "where the waiver defense [is] based on prior litigation by the party seeking arbitration . . . the court should decide the issue of waiver." Doctor's Assocs., Inc. v. Distajo (Distajo I), 66 F.3d 438, 456 (2d Cir. 1995). Other courts have discussed the "traditional rule" that courts should decide this type of waiver. See Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 217-18 (3d Cir. 2007); see also Distajo I, 66 F.3d at 455 (reviewing cases over several decades in which the court decided waiver). In so doing, courts have explained that "[q]uestions of litigation-

conduct are best resolved by a court that has inherent power to control its docket and prevent abuse in its proceedings (i.e. forum shopping)," Apple & Eve, LLC v. Yantai N. Andre Juice Co. Ltd., 610 F. Supp. 2d 226, 230 (E.D.N.Y. 2009) (citation omitted), and because "sending waiver claims to the arbitrator would be exceptionally inefficient" in cases in which "the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration," Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 13 (1st Cir. 2005).  See also Ehleiter, 482 F.3d at 217-19.

In urging that it should be left to the arbitrator to resolve LG's waiver defense, Wi-LAN relies on dicta from Howsam v. Dean Witter Reynolds, Inc., a case in which the Supreme Court stated that "the presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability."  537 U.S. 79, 84 (2002) (quoting Moses H. Cone, 460 U.S. at 24-25) (alteration in original) (internal quotation marks omitted).  In the wake of Howsam, courts have struggled with reconciling the language in Howsam with the courts' traditional role of deciding waiver defenses based on litigation conduct.  Compare Marie, 402 F.3d at 14, Ehleiter, 482 F.3d at 221, and Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 F. App'x 462, 464 (5th Cir. 2004), with Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co., 328 F.3d 462, 466 (8th Cir. 2003).  In explaining why it continues to adhere to the traditional rule post-Howsam, the Third Circuit opined that, "considered within the context of the entire opinion, . . . it becomes clear that the [Howsam] Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration . . . and not to claims of waiver based on active litigation in court."  Ehleiter, 482 F.3d at 219.  Post-Howsam, the Second Circuit has resolved the issue of litigation-conduct waiver on numerous occasions.  See, e.g., Tech. in P'ship, Inc. v. Rudin, 538 F. App'x 38, 39 (2d Cir. 2013); Baker & Taylor,

Inc. v. AlphaCraze.Com Corp., 602 F.3d 486, 490-92 (2d Cir. 2010); Louisiana Stadium &

Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159-60 (2d Cir.

2010); Brookridge Funding Corp. v. Nw. Human Res., Inc., 170 F. App'x 170, 171 (2d Cir.

2006).[2] This Court, which is in the best position to assess Wi-LAN's previous conduct in this

matter, will do so as well.[3]

### B.   Legal Standard for Waiver

"[A] party may waive its right to arbitration by inconsistent resort to litigation." Seguros

Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855, 862 (2d Cir. 1985).  Waiver occurs when a

party "engages in protracted litigation that prejudices the opposing party."  PPG Indus., Inc. v.

Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997).  The Second Circuit has established

a three-part test for determining whether a party has waived its right to arbitration, which

considers: "(1) the time elapsed from the commencement of litigation to the request for

arbitration, (2) the amount of litigation (including any substantive motions and discovery), and

(3) proof of prejudice." Id.  "[A]ny doubts concerning whether there has been a waiver are

resolved in favor of arbitration." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67

F.3d 20, 25 (2d Cir. 1995).  "Given [the] dominant federal policy favoring arbitration, waiver of

---

[2]  Although The Second Circuit noted in Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 394 (2d Cir. 2011), that defenses to arbitrability such as waiver and estoppel "generally" fall into the "group of issues presumptively for the arbitrator" (and referred the issue there to an arbitrator), that case did not involve a claim of waiver based a party's participation in protracted litigation.  Rather, the issue was a previous representation by the party's corporate predecessor that it would agree to submit itself to litigation. Id. at 396.  The main case on which Wi-LAN relies, Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38, 351 F.3d 43, 44 (2d Cir. 2003), is also distinguishable, as the conduct at issue in that case occurred pre-litigation.  By contrast, LG's allegations of waiver in this case are based on Wi-LAN's filing of a complaint and having participated in several months of litigation.

[3]  In a one-sentence footnote in its reply brief, Wi-LAN also argues that the arbitrator should decide the issue of waiver because "by invoking JAMS arbitration rules, the parties agreed to arbitrate the issue of arbitrability." (Defs.' Reply at 3 n.2.)  The Second Circuit does not appear to have squarely addressed the question of whether litigation-conduct waiver is an issue to be decided by an arbitrator when the parties have agreed to have the arbitrator decide questions of arbitrability.  The Court, however, declines to address this question, because it has not been adequately raised.  See United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised . . . ."); Cuoco v. Moritsugu, 222 F.3d 99, 112 n.4 (2d Cir. 2000) (holding that a "single, conclusory, one-sentence argument" was insufficient to adequately raise an issue).

the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985).

### C.    Whether Wi-LAN Waived its Right to Arbitration

Although it is true that Wi-LAN did not move to compel arbitration until approximately four months after it filed the Florida Complaint, it has not waived its right to arbitrate.  While the parties did expend time and effort litigating during that time period, their litigation efforts focused primarily on LG's own motions, and LG has not established that it suffered any prejudice as a result.

"The key to a waiver analysis is prejudice." Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir. 2002).  In this setting, the Second Circuit has "recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." Louisiana Stadium, 626 F.3d at 159.  The first type of prejudice occurs "when the party seeking arbitration loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or obtains information through discovery procedures not available in arbitration." Doctor's Assocs., Inc. v. Distajo (Distajo II), 107 F.3d 126, 131 (2d Cir. 1997) (citations and internal quotation marks omitted).  The second type occurs "when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." Thyssen, 310 F.3d at 105 (quoting Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991)).

LG has not shown substantive prejudice.  Neither the district court in Florida nor the one in New Jersey ruled on any of LG's substantive motions, and Wi-LAN is thus not attempting "to use arbitration as a means of aborting a suit that did not proceed as planned." Cf. Louisiana

Stadium, 626 F.3d at 161. Furthermore, Wi-LAN's discovery requests did not prejudice LG, because LG produced nothing in response. See, e.g., Leadertex, 67 F.3d at 26 (holding that discovery was not prejudicial, because the party seeking arbitration "obtained no facts in discovery that would have been unavailable in arbitration").

LG has also failed to show prejudice due to excessive delay and expense. The approximately four-month delay from the time Wi-LAN filed its complaint on October 3, 2012 until it moved to compel arbitration on February 11, 2013 is insufficient, alone, to establish waiver. See Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985) (holding that an eight-month delay was "insufficient by itself to constitute a waiver of the right to arbitrate"); PPG Indus., 128 F.3d at 108 (same as to five-month delay). LG asserts that "it has exhausted significant resources and incurred substantial expense" in analyzing Wi-LAN's claims, filing its own motions, and responding to Wi-LAN's motion to compel arbitration and motion for leave to file a second amended complaint. (Pls.' Opp'n 17.) All of the motions going to the merits of the case, however, were filed by LG, and thus do not support a finding of waiver. See Thyssen, 310 F.3d at 105 (holding there was no waiver and noting that the party seeking arbitration had not filed any substantive motions); Assitalia le Assicurazioni D'Italia S.p.A. v. Nippon Cargo Airlines Co., Ltd., No. 06 Civ. 6423 (DLI) (JMA), 2009 WL 3064787, at *7 (E.D.N.Y. Sept. 22, 2009) (stating that the party resisting arbitration "cannot complain of any cost or delay associated with" its own motion). "Incurring legal expenses inherent in the litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." PPG Indus., 128 F.3d at 107; see also Leadertex, 67 F.3d at 26 ("[P]retrial expense and delay—unfortunately inherent in litigation—without more, do not constitute prejudice sufficient to support a finding of waiver.").

In any event, Wi-LAN's litigation efforts were not inconsistent with arbitration. Wi-LAN has consistently asserted that its patent-infringement claims relate only to products that are not covered by the PLA, and that those claims, standing alone, are thus nonarbitrable.[4] (Defs.' Mem. of Law 17; No. 12 Civ. 23611, Dkt. 38 at 6-7 (S.D.Fl.).) According to Wi-LAN, when LG filed its motion for summary judgment on January 25, 2013 arguing, to the contrary, that the products at issue *are* covered by the PLA, an arbitrable dispute arose for the first time as to some of Wi-LAN's claims. (Defs.' Mem. of Law 17-18 & n.7; Reply 4.) Two weeks later, on February 8, 2013, Wi-LAN submitted an arbitration demand to JAMS, and, on February 11, 2013, Wi-LAN filed a motion to compel arbitration. (Harris Decl. Ex. 3; No. 12 Civ. 23611, Dkt. 37 (S.D.Fl.).)

Given Wi-LAN's consistently held position that none of the televisions are covered by the PLA, nothing about Wi-LAN's previous conduct is inconsistent with its desire to arbitrate the dispute over the interpretation of the PLA. See, e.g., Rush, 779 F.2d at 888-89 (no waiver where defendants had "reasonably perceived" some of the claims to be nonarbitrable); Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 463 (2d Cir. 1985) ("[p]lainly, the portions of the motion addressed to nonarbitrable claims do not constitute a waiver").

For the foregoing reasons, the Court concludes that Wi-LAN has not waived its right to arbitrate.

## III.  Applicability of the Arbitration Clause

LG next argues that the Arbitration Clause does not apply because Wi-LAN chose to invoke the "injunctive/equitable relief in a judicial forum provision of the [PLA] by filing the Florida litigation." (Pls.' Opp'n 21.) Wi-LAN responds that it is the arbitrator that must decide that issue, which is, in any event, without merit. (Defs.' Reply 6-9.) The Court agrees that

---

[4] The Court expresses no opinion as to whether Wi-LAN's position is correct.

SPA-11

pursuant to the Arbitration Clause, this issue must be decided by the arbitrator. Whether LG's argument is viewed as raising an issue of contract interpretation or one of arbitrability, the parties' agreement dictates that the arbitrator decide it.[5]

Under federal law, "certain presumptions inform the analysis" regarding "[w]hether parties have obligated themselves to arbitrate" a particular issue. Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (citations omitted). Where, as here, the Arbitration Clause is a broad one, there is a presumption that the arbitrator should decide any dispute that "implicates issues of contract construction." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995)); In re Arbitration Between Ayco Co., L.P., 770 N.Y.S.2d 453, 456 (App. Div. 2004) (citing Louis Dreyfus, 252 F.3d at 224). By contrast, issues of arbitrability shall only be referred to the arbitrator if there is clear and unmistakable evidence in the agreement that the parties so intended. Shaw, 322 F.3d at 120-21.

The parties' agreement contains clear and unmistakable evidence that they intended the arbitrator to resolve both issues of contract interpretation and issues of arbitrability. The Arbitration Clause in the PLA directs that "arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures." (Dallow Decl. Ex. A ¶ 8.3.) The JAMS rules, in turn, provide that:

> Jurisdictional and *arbitrability issues*, including disputes over the formation, existence, validity, *interpretation or scope of the agreement* under which Arbitration is sought, and who are proper parties to Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and *arbitrability issues* as a preliminary matter.

---

[5] Because the parties' agreement clearly and unmistakably provides that issues of contract interpretation and arbitrability shall be decided by the arbitrator for the reasons below, the Court need not decide whether LG's argument raises an issue of contract interpretation or one of arbitrability.

11

(Dallow Decl. Ex. B, Rule 11(c) (emphasis added).)

The JAMS rules, which are incorporated into the Arbitration Clause, dictate that the arbitrator, not the Court, must address LG's argument that the Arbitration Clause does not apply because Wi-LAN "chose" litigation. (Pl.'s Opp'n 20-21.) "[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 & n.1 (2d Cir. 2005). In Emilio v. Sprint Spectrum L.P., 508 F. App'x 3, 5 (2d Cir. 2013), for example, the Second Circuit concluded that a nearly identical JAMS Rule provided evidence that "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator." See also Shaw, 322 F.3d at 125 (holding, based on rules incorporated by arbitration agreement, that "the agreement clearly and unmistakably evidences the parties' intent to arbitrate questions of arbitrability"). By consenting to be governed by the JAMS rules, the parties thus clearly and unmistakably consented to arbitrate any preliminary "arbitrability issues" as well as the "interpretation . . . of the agreement." (Dallow Decl. Ex. B, Rule 11(c).)

LG asserts that its argument raises an issue of arbitrability—not an issue of contract interpretation—and relies on United Parcel Serv. v. Lexington Ins. Grp., which held that, although the parties' agreement incorporated the AAA rules, those rules did not determine whether the court or the arbitrator should decide arbitrability issues. No. 12 Civ. 7961 (SAS), 2013 WL 1897777, at *1-2 (S.D.N.Y. May 7, 2013). In Lexington, however, the parties' agreement specified that the AAA rules would govern only the procedural aspects of arbitration, and the court held that questions of arbitrability are substantive. Id. By contrast, the PLA here clearly provides that "arbitration shall be administered by JAMS pursuant to its Comprehensive

Arbitration Rules and Procedures," (Dallow Decl. Ex. A, at ¶ 8.3), which in turn state that "[j]urisdictional and arbitrability disputes, including disputes over the . . . interpretation or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator," (Dallow Decl. Ex. B, Rule 11(c)).  The Arbitration Clause here is thus more similar to the arbitration clauses at issue in Contec, 398 F.3d at 208, Emilio, 508 F. App'x at 6, and Shaw, 322 F.3d at 122, in all of which issues of arbitrability were delegated to the arbitrator.  The arbitrator, accordingly, and not this Court, shall address LG's argument that the Arbitration Clause is inapplicable because Wi-LAN "chose" litigation.

## IV.  The Claim-Splitting Doctrine

Lastly, LG asserts that the claim-splitting doctrine prevents this Court from enforcing the arbitration provision and requires the Court to enjoin Wi-LAN from proceeding with arbitration. (Pls.' Opp'n 23-24.)  The claim-splitting doctrine does not apply in this setting.

The Second Circuit has described claim splitting as a doctrine that allows district courts to "manage their docket and dispense with duplicative litigation" by dismissing the later of two actions "when [a] plaintiff had previously filed related claims that were pending in the same federal court against the same defendants."  Kanciper v. Suffolk Cnty. Soc. for the Prevention of Cruelty to Animals, Inc., 722 F.3d 88, 92 (2d Cir. 2013) (quoting Katz v. Gerardi, 655 F.3d 1212, 1218-19 (10th Cir. 2011)).  It also stated that "plaintiffs 'generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'"  Id. (quoting Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007)).

The claim-splitting doctrine, as described in Kanciper, is inapplicable here.  The only "previously filed related claims" in this matter are those stayed in the District of New Jersey.

Following this Order, those claims will be submitted to the arbitrator, who will determine which are arbitrable and which are nonarbitrable. LG's contention that the claim-splitting doctrine requires all of the parties' claims, even the arbitrable ones, to be adjudicated together by the district court in New Jersey is unpersuasive. The Supreme Court has explained that the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (quoting Moses H. Cone, 460 U.S. at 20); see also In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 142 (2d Cir. 2011) (holding that the district court had appropriately enjoined arbitration of nonarbitrable claims, but that it had erred by enjoining arbitration as to the related, arbitrable claims). If the JAMS arbitrator determines that the parties' dispute involves both arbitrable and nonarbitrable issues—with the former to be decided by the arbitrator and the latter by the district court in New Jersey—any resulting bifurcation of the proceedings would be the outcome required by the FAA. See Byrd, 470 U.S. at 220-21 (noting that Moses H. Cone "affirmed an order requiring enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings"); Nilsen v. Prudential-Bache Sec., 761 F. Supp. 279, 288 (S.D.N.Y. 1991) ("Although this order will split plaintiff's claims between two forums, the possible inefficiency of resulting parallel proceedings is a consequence of the [FAA] itself.").

There is no basis to conclude that the claim-splitting doctrine bars arbitration of the present dispute. LG has not cited any case that applies the claim-splitting doctrine to deny a motion to compel arbitration under similar circumstances, and claim splitting has been rejected as a defense to arbitration in this circuit in the past. See Danny's Const. Co., Inc. v. Birdair, Inc., 136 F. Supp. 2d 134, 146 (W.D.N.Y. 2000) (rejecting claim-splitting argument and compelling arbitration, despite the fact that it would "likely result in [the plaintiff's] contesting related issues

SPA-15

of fact in two different forums").  LG, therefore, has not presented a valid reason why this Court should refrain from enforcing the parties' arbitration agreement.

## CONCLUSION

For the foregoing reasons, Wi-LAN's motion to compel arbitration is granted and LG's request for declaratory and injunctive relief is denied.  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated:          July 21, 2014
                New York, New York

                                          _____
                                          Ronnie Abrams
                                          United States District Judge

SPA-16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
LG Electronics, Inc. and LG Electronics
U.S.A., Inc.,

                     Plaintiffs,                     13 **CIVIL** 2237 (RA)

          -against-                          **JUDGMENT**

WI-LAN USA, Inc. And WI-LAN, Inc.,
                         Defendants.
------------------------------------------------------------X

        Defendants having moved to compel arbitration (Doc. #39), and the matter having been

brought before the Honorable Ronnie Abrams, United States District Judge, and the Court, on July

21, 2014, having issued its Opinion and Order (Doc. #50) granting WI-LAN's motion to compel

arbitration and denying LG's request for declaratory and injunctive relief and directing the Clerk

of Court to respectfully enter judgment and close the case, it is,

        **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated July 21, 2014, WI-LAN's motion to compel arbitration is granted

and LG's request for declaratory and injunctive relief is denied; accordingly, the case is closed.

**Dated:** New York, New York
          July 21, 2014

                                **RUBY J. KRAJICK**
                               _____
                                **Clerk of Court**

              **BY:**   _____
                                **Deputy Clerk**